TOWNSHIP OF WASHINGTON *v.* FIRST NATIONAL BANK OF HUNTINGTON.

ASSIGNMENTS—NONNEGOTIABLE INSTRUMENTS—PRIORITY BETWEEN ASSIGNEES—ESTOPPEL.

A bridge company, having entered into a contract with a township for the erection of a bridge, executed an assignment thereof to a bank, attaching a copy of the contract, retaining the original, and agreeing to collect the money becoming due thereon and remit it to the bank. On receipt of the township order for the balance due, the bridge company sold it to another bank for value, the purchaser having no knowledge of the assignment. *Held,* that the prior assignee, by permitting the bridge company to retain the indicia of ownership, estopped itself to assert its superior right to the nonnegotiable paper, and that the equities of the second assignee should prevail.[1] HOOKER and OSTRANDER, JJ., dissenting.

Appeal from Gratiot; Stone, J. Submitted November 14, 1906. (Docket No. 157.) Decided March 26, 1907.

Bill of interpleader by the township of Washington against the Wabash Bridge & Iron Works, the First National Bank of Wabash, the First National Bank of Huntington, and E. W. Bowen & Company to determine the title to a township order. From a decree for defendant First National Bank of Wabash, defendants First National Bank of Huntington and E. W. Bowen & Company appeal. Affirmed.

On the 20th day of August, 1902, the Wabash Bridge & Iron Works, of Wabash, Ind., entered into a contract with the complainant for the work and material to erect the superstructure of a bridge across Maple river in Gratiot county for the contract price of $995, to be completed

[1] As to priority rights of different assignees of fund in hands of third person, see note to *Re Phillips* (Pa.), 66 L. R. A. 760.

November 20, 1902, and to be paid for in two township orders—one for $497.50, due March 1, 1903, and one for $497.50, due March 1, 1904, with interest at 6 per cent.

On the 27th day of August, 1902, the bridge company made to the Huntington National Bank, of Huntington, Ind., a writing setting forth in substance that for the purpose of securing payment of a certain obligation held by said bank it assigned to said bank said contract, describing it by its number and amount, and attached a copy of said contract to said writing. It was further agreed therein that the bridge company should collect the money to come due on said contract, and remit the same to said bank in full satisfaction of the debt secured thereby, with interest.

On the 14th day of October, 1902, the bridge company entered into another contract with the complainant for the erection of the substructure of said bridge for the price of $760, to be paid one-half in cash March 1, 1903, and the balance March 1, 1904, with interest at 6 per cent., and the work to be completed on or before the 20th day of December, 1902.

On the 20th day of October, 1902, the bridge company executed a writing to E. W. Bowen & Co., bankers, of Delphi, Ind., in all respects similar to the one it had previously made to the Huntington bank, except that it described by number and amount the contract last above mentioned, and set forth that the same was to secure a loan of $5,500. A copy of this contract was attached, and it contained the same agreement that the bridge company was to collect and remit to the satisfaction of the loan. At the time of these assignments the original contracts were not delivered in either case, and it was the understanding in both cases that the bridge company should go on and complete the contracts and make settlements with complainant therefor.

The bridge company went on and completed the work under both contracts in accordance with their terms, and on March 7, 1903, the complainant accepted the work,

and made settlement with the bridge company and paid it in full for said contract by making and delivering to said company's demand township orders for $877.25, and one township order for $877.75, payable March 1, 1904, with interest at 6 per cent. The bridge company received the money upon the demand orders, and neither the orders nor the money received therefrom are in controversy in this case, and the evidence does not disclose what the bridge company did with the money.

On March 30, 1903, the bridge company sold the time order of $877.75 to the First National Bank of Wabash, Ind., and indorsed and delivered said order to said bank. The bank purchased said order in good faith in the regular course of its business, without notice of either of the assignments aforesaid, and paid the bridge company $869 net therefor. At the time the complainant settled with the bridge company and gave the order in question, it had received no notice from either the Huntington bank or the Delphi bank that they, or either of them, claimed any interest in the contracts in question.

On September 29, 1903, the bridge company was adjudged insolvent, and at that time was owing to the Huntington bank, upon the debt mentioned in the written assignment, the sum of $3,700, and to E. W. Bowen & Co. $5,500 on the debt mentioned in the assignment from the bridge company to this firm.

Each of the claimants — the Huntington bank, the Wabash bank, and E. W. Bowen & Co.—made claims upon the complainant for the amount of the order in question. The complainant filed the bill of interpleader, and deposited with the court the amount of the order. The defendants have interpleaded, and the case was heard upon its merits upon such interpleadings. The controversy is between the Wabash bank on the one side, and the Huntington bank and the Delphi bank on the other. The Wabash bank claims the money as an innocent bona fide purchaser of the order for value without notice, and the Huntington and Delphi banks

claim under their respective assignments of the contract. The circuit judge held that the First National Bank of Wabash was entitled to priority, and from this decree the Huntington bank and E. W. Bowen & Co. appeal.

*J. Leè Potts*, for appellant First National Bank of Huntington.

*John M. Everden*, for appellant E. W. Bowen & Co.

*O. G. Tuttle*, for appellee First National Bank of Wabash.

MONTGOMERY, J. (*after stating the facts*). The contention of the appellants is that the order in question is not negotiable under the law merchant, and that one who purchases it takes it subject to all equities in favor of third persons who have a prior lien on the order or fund.

It is unquestionably the general rule that the seller or pledgor of property other than negotiable securities can convey no greater rights than he himself has. 1 Mechem on Sales, § 157; *Judge* v. *Vogel*, 38 Mich. 568, 569; *Walker* v. *Thompson*, 108 Mich. 686; *Carmody* v. *Crane*, 110 Mich. 508; *Miner* v. *Vedder*, 66 Mich. 101.

It has been said that this rule does not protect latent equities, and that the rights of a prior assignee are latent equities; but the better rule is that when the real owner of a chose in action is not in any way in fault in inducing a purchase by another the equity prior in time will prevail. 2 Pomeroy on Equity Jurisprudence (3d Ed.), § 708.

The delivery of a past-due negotiable note indorsed in blank, but delivered for a special purpose, does not amount to such an inducement to the second purchaser as estops the true owner from claiming title as against one to whom the paper has been fraudulently transferred. *Osborn* v. *McClelland*, 43 Ohio St. 284; *Davis* v. *Bechstein*, 69 N. Y. 440. It is otherwise if the assignment or indorsement is made with the intention that it shall be negotiated. *Bloomer* v. *Henderson*, 8 Mich. 395.

It has also been held in many cases that where the owner of a chattel or a nonnegotiable chose in action has clothed another with the indicia of ownership and possession a subsequent bona fide purchaser from one having the apparent title takes the chattel or chose in action free of the equities or rights of the true owner, the principle governing being in all respects analogous to that which validates the acts of an agent to the extent of his *apparent* authority. See Mechem on Agency, § 787 et seq.; *McNeil* v. *National Bank*, 46 N. Y. 325; *Moore* v. *Moore*, 112 Ind. 149. In 2 Pomeroy on Equity Jurisprudence (3d Ed.), § 698, it is stated:

"It may be said, in general, that, in order to protect himself against subsequent transfer by the assignor, where a notice is not given to the debtor or the holder of the legal interest, the assignee should obtain a delivery and possession of the written instrument, which, in ordinary language, constitutes the thing in action, which embodies and is the highest evidence of the existing demand; or, when such delivery and possession are impossible from the very nature of the subject-matter, that he should take all the steps permitted by the law which are equivalent to actual possession."

See, also, *Graham Paper Co.* v. *Pembroke*, 124 Cal. 117 (44 L. R. A. 632).

Applying these principles to the present case, it seems clear that the equities of the Wabash bank should prevail. The bridge company was permitted to retain the original contract, and this without notice of any rights of the prior assignees. It was known that the only method of payment was by orders drawn on the township treasurer, and that these must come to the hands of the bridge company as the apparent owner. The bridge company was thus invested with every indicia of ownership, and within the rule stated one who was thus induced to purchase these orders and who parts with value upon the strength of this apparent ownership may well assert that the prior assignees have estopped themselves. The case of *Miner* v. *Vedder*, 66 Mich. 101, is relied upon by the appellants.

In that case two claims were asserted by the respondent, *first*, that there was a mistake in the amount of the order; and, *second*, that the order was subject to a lien in favor of John K. Boies. The relator claimed to be a bona fide holder. His relation to the order was as between him and Boies the same as that of the Wabash bank in this case. The language used in the decision as it relates to both claims is broad, but an examination of the record discloses that the question of relator's bona fides was submitted to the jury, and that the finding was adverse to the relator, thus eliminating the question of priority of equities. If the case be limited to the point in issue no rule opposed to the views above expressed was laid down, and it appears that the charge of Judge Howell was fully in accord with this opinion.

The decree is affirmed, with costs against the Huntington bank and E. W. Bowen & Co.

MCALVAY, C. J., and CARPENTER, GRANT, BLAIR, and MOORE, JJ., concurred with MONTGOMERY, J.

HOOKER, J. (*dissenting*). The question in this case is whether an assignee of a chose in action, consisting of a sum to be earned by the assignor under a partially performed contract between itself and a township for the building of a bridge, is estopped from asserting its title against a subsequent assignee of the township warrants issued upon its treasurer to and in the name of the assignor on full performance of the contract, under the rule laid down in *McNeil* v. *National Bank*, 46 N. Y. 325. The assignment was in writing, a copy of the contract between the township and the assignor was attached, and it contained a promise by the assignor to collect and remit the moneys to become due thereon, without expense to the bank, to the full satisfaction of a note held by the bank, given by the assignor.

It may be assumed that any chattel may become the object of an estoppel, and the true and rightful owner may be precluded by his own misconduct, and perhaps in

some cases by negligence, from asserting his title.   In this case the acts which are said to raise an estoppel are the failure to require possession of the original contract and the consent that the assignor should receive and remit payment from the township.   It is argued that this necessarily contemplated the issue of orders to and in the name of the bridge company, and therefore was permitting it to obtain, or, in other words, investing it with, the indicia of title and apparent right to dispose of the orders.   So far as the mere fact of not receiving the original contract is concerned, it may be eliminated, as it does not appear that the Wabash bank saw it, or knew or even inquired whether the bridge company had assigned it or then had possession of it, and therefore it was not misled by the apparent possession of the contract into the belief that the assignment gave the indicia of title.   We do not, however, mean to intimate that the failure to take the contract might of itself create an estoppel.

The leading case supporting the claim of counsel for the Wabash bank is *McNeil* v. *National Bank*, supra. In that case, where an owner of corporate stock assigned the certificates in blank, *which was the usual method of transferring stock*, and delivered them to a broker *who was one of a class* usually *engaged in the sale of stock for others*, it was held that the assignor was estopped from denying the validity of a transfer of the stock by the broker to a bona fide holder, because he had by a *writing over his signature not only conferred the apparent title* upon the broker but *had also* given him a *power of attorney to transfer the same* according to the usual method.

It appears to be conceded that the delivery of past-due negotiable paper (which is therefore nonnegotiable) indorsed in blank, if for a special purpose, does not estop the indorser from disputing the title of a subsequent purchaser in good faith from the indorsee, though that is the usual way of transferring such paper, where not payable

to bearer, and we should hesitate to say that the owner of a note payable to bearer is estopped by delivering after maturity for a special purpose, even if it be to an agent or attorney for collection, from denying the title of one to whom it has been wrongfully or fraudulently sold and transferred. See *Davis* v. *Beckstein*, 69 N. Y. 440.

The case of *Moore* v. *Moore*, 112 Ind. 149, is distinguishable in this, viz.: That, though the indorsement and delivery was procured by fraud and without consideration, it was not delivered for a special purpose, but *under a contract* which *contemplated the actual transfer* of the title. See *Osborn* v. *McClelland*, 43 Ohio St. 284; *Wood* v. *McKean*, 64 Iowa, 16; *Woodsum* v. *Cole*, 69 Cal. 142.

These cases seem to hold that it requires something more than an unqualified indorsement or assignment of non-negotiable paper to create a presumption of absolute title, in view of the many cases of and reasons for transfers absolute upon their face; in other words, these are not enough of themselves to invest one with "that apparent indicia of title" which raises an estoppel. In *McNeil* v. *National Bank*, supra, the court said:

"Simply intrusting the possession of a chattel to another as depositary, pledgee, or other bailee, or even under a conditional executory contract of sale, is clearly insufficient to preclude the real owner from reclaiming his property, in case of an unauthorized disposition of it by the person so intrusted. (*Ballard* v. *Burgett*, 40 N. Y. 323.)

"'The mere possession of chattels, by whatever means acquired, if there be no other evidence of property or authority to sell * * * will not enable the possessor to give a good title.' *Covill* v. *Hill*, 4 Denio (N. Y.), 327."

The opinion continues:

"But if the owner intrusts to another, not merely the possession of the property, but also written evidence, over his own signature, of title thereto, and of an unconditional power of disposition over it, the case is vastly different. There can be no occasion for the delivery of such documents, unless it is intended that they shall be used, either

at the pleasure of the depositary, or under contingencies to arise. If the conditions upon which this apparent right of control is to be exercised are not expressed on the face of the instrument, but remain in confidence between the owner and the depositary, the case cannot be distinguished, in principle, from that of an agent who receives secret instructions qualifying or restricting an apparently absolute power.

"In the present case the plaintiff delivered to and left with his brokers the certificate of the shares, having indorsed thereon the form of an assignment, expressed to be made 'for value received,' and an irrevocable power to make all necessary transfers. The name of the transferee and attorney and the date were left blank. This document was signed by the plaintiff, and its effect must be now considered."

See a discussion of this question and case in 2 Pomeroy on Equity Jurisprudence (3d Ed.), § 710, and note 2.

The question, then, is not whether a nonnegotiable chose in action may be so treated by its true owner as to create an estoppel against him to assert his title, but whether the circumstances before us should be given such effect. What are they? The Huntington bank purchased and took an assignment of this claim. This assignment upon its face clearly showed the purpose for which it assented to the collection of the money to become due. If it can be said that the bank tranferred the absolute title to this fund, or the warrants, which counsel agree to have been the method of payment which the parties must have contemplated for the reason that such is the only method of payment contemplated by law, it is plain that it restricted their use, and that the instrument plainly negatives any authority to sell them. If the Wabash bank did not see this assignment, it was not misled by it as an indicia of title. If it did, it was fully advised of its restrictions. Therefore, the case is left to rest upon the bare fact that the bridge company was allowed to have possession of the order, a nonnegotiable instrument, and is certainly a case no stronger than as though the Huntington bank had itself taken into its possession the orders

contemplated by the contract, and delivered them for the special purpose of collection. Again, if the bridge company had the right to take orders in its own name, it was not authorized to take them in the name of C. H. Wheaton. In short, we should look in vain for anything over the signature of the Huntington bank conferring *indicia of absolute title* or *unlimited authority to receive and negotiate the town orders* issued. The estoppel, if there be one, must rest, not on a writing such as has been described in *McNeil* v. *National Bank*, supra, but upon a failure to put it out of the power of the bridge company to fraudulently obtain in its own name and for its own purposes the orders to which the assignee had the true right.

We are of the opinion that this case is within the rule of *Bush* v. *Lathrop*, 22 N. Y. 535, and that the application of any other rule would go far towards obliterating the well-settled rule that nonnegotiable paper is taken subject to the equities of the true owner and making all choses in action practically negotiable, which, if it is considered desirable, should be left for the legislature to do. See *Combs* v. *Hodge*, 21 How. (U. S.) 397; *Knox* v. *Eden Musee Americain Co.*, 148 N. Y. 441 (31 L. R. A. 779); *Jarvis* v. *Manhattan Beach Co.*, 148 N. Y. 652 (31 L. R. A. 776); *Cutts* v. *Guild*, 57 N. Y. 229; *Commercial Nat. Bank* v. *Burch*, 141 Ill. 519; *Patterson* v. *Rabb*, 38 S. C. 138 (19 L. R. A. 831); *Sutherland* v. *Reeve*, 151 Ill. 385; *Schafer* v. *Reilly*, 50 N. Y. 61, 66.

We do not discuss at length the question of the Bowen claim, as it is sufficiently covered by what has been said.

The decree should be reversed, and a decree entered here in favor of the Huntington bank.

OSTRANDER, J., concurred with HOOKER, J.