JOSEPH M. HERMAN *vs.* CONNECTICUT MUTUAL LIFE INSURANCE COMPANY & others.

Suffolk. March 23, 1914. — May 25, 1914.

Present: RUGG, C. J., HAMMOND, LORING, SHELDON, & CROSBY, JJ.

*Equity Jurisdiction,* Equitable replevin. *Assignment. Estoppel. Insurance,* Life. *Bills and Notes,* Validity.

One who received an assignment of a policy of life insurance from the insured without the policy itself, which by reason of fraud of an agent of the insured was not delivered to him, may maintain a suit in equity for possession of the policy against a person to whom it has been delivered by the agent without right and who secretes it so that it cannot be reached in an action at law.

An assignment of a policy of life insurance by the insured is valid as between him and the assignee, although the policy is not delivered to the assignee and although a provision of the policy, that no assignment of it "shall be valid unless made in writing, and a duplicate or certified copy thereof be filed at the office of said company," is not complied with.

A policy of life insurance is a non-negotiable chose in action, and, if by his own voluntary action the insured or one to whom the insured has assigned his rights so clothes a third person with the *indicia* of ownership as to justify others in regarding him either as the rightful owner or as having authority from that owner to transfer the policy, the owner or a rightful assignee is estopped to set up his title against a *bona fide* purchaser for value from such third person.

An assignment of a policy of life insurance was given by the insured with the policy to an agent of the company to deliver to the assignee. The agent delivered the assignment to the assignee but refused to deliver the policy, falsely representing

that the company held it as security for premium notes of the insured. The assignee, by reason of his "full confidence in" the agent, did nothing further about the assignment of the policy for four and one half years and during that time did not notify the insured that he did not have possession of it nor give any notice to the company of his assignment. In the meantime, the agent, acting for the insured, procured a loan of money upon a note of the insured and as security for the note delivered to the money lender the policy together with an assignment to the payee of the insured's interest therein. The agent then died and, the facts becoming known to all the parties, the first assignee brought a suit in equity against the second assignee to gain possession of the policy. *Held*, that the first assignee by his voluntary action in leaving the policy in the possession of the agent for the insured was estopped to deny the validity of its delivery to the second assignee, and could have possession of it only upon paying to the second assignee the amount of his note with interest and costs of suit. In the same suit it appeared that, after the giving of the note to the second assignee, the agent procured a second loan from him for which he gave him a second note of the insured upon which, after it was signed, he had written without authority of the insured a statement that the same policy was to be held as security for it. *Held*, without deciding whether such interpolation upon the note destroyed its validity, that the second assignee had no right to hold the policy as security for the note.

BILL IN EQUITY, filed in the Superior Court on September 15, 1913, and afterwards amended, in which as amended the Connecticut Mutual Life Insurance Company, Harry R. Stanley, executor of the will of Sumner C. Stanley, and Bernhard Sommer were named defendants, and which contained the following allegations in substance:

In 1896 Sommer procured an ordinary policy of life insurance from the defendant company in the sum of $10,000, payable in case of his death to his heirs, executors and assigns. At the date of the bill the policy had a cash surrender value of $4,000. On February 11, 1909, for a valuable consideration Sommer assigned his interest in the policy to the plaintiff as collateral security for the indebtedness of Sommer to the plaintiff and others described in the instrument of assignment. One George E. Williams, who at the time of that assignment and until his death on July 28, 1913, was the general agent of the insurance company in Boston, drew the assignment and Sommer delivered it and the policy to Williams to be turned over to the plaintiff. Williams delivered the assignment to the plaintiff but did not deliver the policy, falsely asserting that the company held it as collateral security for premium notes payable to it. The company did not hold the policy and Sommer was in no way indebted to it. Williams held

the policy and on February 2, 1910, delivered it with what purported to be an assignment of Sommer's interest therein to the defendant Stanley, and Stanley claimed to hold it as security for a loan of $4,000, refusing to deliver it to the plaintiff when he demanded it and secreting it so that it could not be reached by the plaintiff in an action of replevin. The plaintiff denied the validity of the assignment to Stanley. The company refused to recognize the plaintiff's rights to the policy, alleging that it was unable to determine who owned it. A quarter annual premium on the policy was overdue and there was danger that the policy would lapse for non-payment of premiums.

The fifth clause of the policy, which was annexed to the bill, contained the following provision as to assignments:

"That no assignment of this policy shall be valid unless made in writing, and a duplicate or certified copy thereof be filed at the office of said Company; and any claim against this Company, arising under this policy, made by an assignee or creditor, shall be subject to satisfactory proof of interest in the life insured, in due form, and to any breach of the conditions of this contract by any of the parties hereto, whether such breach exist prior or subsequent to any such assignment, and such proof of interest shall be a condition precedent to any right of action on this contract by or on behalf of such assignee; and this Company shall in no case be responsible for the validity of any assignment."

The prayers of the bill were for injunctions *pendente lite* preventing any acts which would obstruct the plaintiff from gaining possession of the policy at the termination of the suit, and for decrees declaring the plaintiff's right to possession of the policy and ordering its delivery to him.

The defendant Stanley demurred to the bill as amended on the grounds of want of equity, because the plaintiff had a complete and adequate remedy at law, and because the administrators of the estate of George E. Williams and those for whose benefit the assignment to the plaintiff was made were necessary parties.

The demurrer was overruled by *Pierce,* J., and the defendant Stanley appealed.

The bill was taken *pro confesso* against Sommer. All other parties filed answers, issues were joined and the case was heard by *Jenney,* J. The judge made findings of fact substantially in

accordance with the allegations of the bill, and, in addition, found the following facts in substance:

Williams, acting for Sommer, had had several transactions with the defendant Stanley's testate and with Stanley and, on February 12, 1910, by reason of their dealings Sommer owed Stanley $3,000. On that day, acting for Sommer, Williams gave to Stanley a note of Sommer's for that amount, with the policy in question in this suit and an assignment of Sommer's rights under the policy, including a power of attorney to Stanley to collect its proceeds in the name of Sommer.

On February 2, 1911, Stanley paid to Williams $1,000 more, receiving therefor another note of Sommer dated that day. On this note, after it was signed by Sommer and without his authority, Williams wrote: " Conn Mut. Policy 215356 . as security."

Williams died on August 1, 1913. The plaintiff notified the insurance company on October 5, 1913, of the assignment of the policy to him. He did not know of the assignment to Stanley until after the death of Williams.

Stanley notified the insurance company on August 23, 1913, of the assignment of the policy to him, and that he held it to secure both the notes of February 2, 1910, and of February 2, 1911.

"Stanley was ignorant of the assignment to Herman until after the death of Williams, and acted in good faith and without collusion with Williams. The policy has always been in his possession since the time it was handed to him in February, 1910. He has not been negligent in his dealings with reference to these assignments, unless it was negligent on his part to make these loans to Williams without ascertaining the true facts from Sommer. In these transactions Williams represented Sommer. The proceeds of both loans were given to Williams in checks payable to his order. Stanley had had many dealings with Williams in making loans upon policies insuring the lives of other persons, aggregating a very large amount. Williams paid him no bonus or commission on any loan."

Other material facts found by the judge are stated in the opinion.

The judge reported the case to this court for determination.

*P. Rubenstein,* for the plaintiff.

*G. L. Mayberry,* (*J. M. Hallowell* with him,) for the defendant, Harry R. Stanley, executor of the estate of Sumner C. Stanley.

SHELDON, J.   1. The defendant Stanley's demurrer to the bill was overruled rightly. The bill states a proper case for equitable relief. *Brigham* v. *Home Life Ins. Co.* 131 Mass. 319. *French* v. *Peters,* 177 Mass. 568, 573, 574. A somewhat similar bill was maintained in *Blinn* v. *Dame,* 207 Mass. 159.

2. The plaintiff by his assignment from Sommer acquired as against the latter a valid title to the policy of insurance which here is in question. As between the plaintiff and Sommer, it is immaterial that the assignment was not written upon or attached to the policy, that no reference to the assignment was written or noted on the policy, or that no notice of it was given to the insurance company, either in the manner required by the fifth clause of the policy or otherwise. *Merrill* v. *New England Mutual Life Ins. Co.* 103 Mass. 245, 252. *Hewins* v. *Baker,* 161 Mass. 320. *Atlantic Mutual Life Ins. Co.* v. *Gannon,* 179 Mass. 291. See also *Northwestern Mutual Life Ins. Co.* v. *Wright,* 153 Wis. 252; *Wood* v. *Phœnix Mutual Life Ins. Co.* 22 La. Ann. 617; *Manhattan Life Ins. Co.* v. *Cohen,* 139 So. W. Rep. 51; *Howe* v. *Hagan,* 97 N. Y. Supp. 86; *Cowdrey* v. *Vandenburgh,* 101 U. S. 572; *Dunlevy* v. *New York Life Ins. Co.* 204 Fed. Rep. 670; *Fortescue* v. *Barnett,* 3 M. & K. 36. The contrary statements in *Palmer* v. *Merrill,* 6 Cush. 282, have not been followed. *James* v. *Newton,* 142 Mass. 366, 378. *Richardson* v. *White,* 167 Mass. 58, 60. The English rule, as stated in *Dearle* v. *Hall,* 3 Russ. 1, though adopted in many other jurisdictions, is not the law of this Commonwealth. *Thayer* v. *Daniels,* 113 Mass. 129, 131. *Putman* v. *Story,* 132 Mass. 205, 211.

It is true also, as the plaintiff has contended, that the owner of a chattel does not, by merely entrusting to a third person the custody or even the possession thereof, hold him out as its owner, and will not by that fact alone be estopped from setting up his title against even a *bona fide* purchaser from his bailee. *Rogers* v. *Dutton,* 182 Mass. 187, 189, and cases there cited. But we have here to do, not with a chattel, but with a non-negotiable chose in action, the right to receive in the future a certain sum of money upon the happening of certain contingencies. The policy of in-

surance merely shows the existence, nature and extent of the right. As has been correctly stated by counsel for Stanley, "it is the tangible evidence which the owner of the right possesses in order to show title to the right." The court must apply here the rule stated by the Chief Justice in *Baker* v. *Davie*, 211 Mass. 429, 440, "that when an owner has so acted as to mislead a third person into the honest belief that the one dealing with the property had a right to do so, he is estopped from showing the truth." The statement of Lord Herschell in *London Joint Stock Bank* v. *Simmons*, [1892] A. C. 201, 215, quoted and followed by this court in *Gardner* v. *Beacon Trust Co.* 190 Mass. 27, 28, is to the same effect: "The general rule of the law is, that where a person has obtained the property of another from one who is dealing with it without the authority of the true owner, no title is acquired as against that owner, even though full value be given, and the property be taken in the belief that an unquestionble title thereto is being obtained, unless the person taking it can show that the true owner has so acted as to mislead him into the belief that the person dealing with the property had authority to do so. If this can be shown, a good title is acquired by personal estoppel against the true owner." The same general principle (although its application in that case depended upon the existence of a custom) was stated again in *Baker* v. *Davie*, 211 Mass. 429, 436. See also *Washington* v. *First National Bank*, 147 Mich. 571; *Brocklesby* v. *Temperance Permanent Building Society*, [1895] A. C. 173, 181; *Farquharson Brothers & Co.* v. *King & Co.* [1901] 2 K. B. 697. See *Scollans* v. *Rollins*, 173 Mass. 275.

But this estoppel of a rightful owner to set up his title against a *bona fide* purchaser for value from one who had not the right to sell rests upon the conduct of the rightful owner. It arises against him when by his own conduct he has so clothed the wrongdoer with the *indicia* of ownership as to justify third persons in regarding the wrongdoer as either the rightful owner or as having authority from that owner. The estoppel arises only from the owner's voluntary action tending to produce and in fact producing that result. If this policy had been delivered to the plaintiff and then had been obtained from him by Sommer or Williams by means of a common law larceny, there would have been no foundation for an estoppel against the plaintiff, because, whatever

third persons might have thought or even might have been justi-
fied in thinking, the possession and apparent ownership would
not have been put into Sommer or into Williams as Sommer's
agent by any voluntary action of the plaintiff. *Bangor Electric
Light & Power Co.* v. *Robinson,* 52 Fed. Rep. 520. *Farmers'
Bank* v. *Diebold Safe & Lock Co.* 66 Ohio St. 367. This distinction
was stated clearly by Holmes, C. J. in *Russell* v. *American Bell
Telephone Co.* 180 Mass. 467, 469, *et seq.,* citing as typical cases
*Knox* v. *Eden Musee Americain Co.* 148 N. Y. 441, and *Pennsyl-
vania Railroad's appeal,* 86 Penn. St. 80. See also *Varney* v.
*Curtis,* 213 Mass. 309, 312.

The rights of these parties depend upon the application of the
principles which we have stated.

The plaintiff took his assignment by an instrument separate
and apart from the policy itself. He allowed the possession of
the policy to remain unaltered. It is true that he did this on the
false representation that it was held by the insurance company
as security for a premium loan; but the fact remains that it was his
voluntary act. He took no other precaution, either by giving
notice to the company or otherwise. He testified that he did not
even tell Sommer that the policy had not been delivered to him.
He trusted everything to Williams; and his own testimony was
that he did this by reason of his "full confidence in Williams."
He knowingly allowed the circumstances to be such as to indicate
that Sommer retained the full ownership of the policy, and such
that no inquiry of the company would disclose anything to the
contrary or throw any doubt upon Sommer's title. For this
reason, such cases as *Mente* v. *Townsend,* 68 Ark. 391, are not
applicable here. The case is a stronger one than *Bridge* v. *Con-
necticut Mutual Life Ins. Co.* 152 Mass. 343, and the reasoning
of that opinion is decisive against the plaintiff. There are no
circumstances upon which any distinction can be made in his
favor.

But the assignment to Stanley was not in reality, but only in
form, an absolute one. It was given to secure an indebtedness of
Sommer to Stanley. The plaintiff has a right to redeem from
Stanley. This makes it necessary to determine the amount for
which Stanley can hold the policy as against the plaintiff.

This policy was assigned to Stanley on February 2, 1910, to

secure a note for $3,000. Afterwards Stanley lent to Sommer the further sum of $1,000, and took from him a note for that amount, dated February 2, 1911, and signed by Sommer. Above Sommer's signature, Williams, without Sommer's knowledge or consent, wrote the words: "Conn. Mut. Policy 215356 as security." Those words described this policy.

We need not consider whether this interpolation by Williams in the note before its delivery to Stanley destroyed the validity of the note. R. L. c. 73, §§ 141, 142. *Stoddard* v. *Penniman,* 108 Mass. 366. *Draper* v. *Wood,* 112 Mass. 315. *Citizen's National Bank* v. *Richmond,* 121 Mass. 110. *Greenfield Savings Bank* v. *Stowell,* 123 Mass. 196. But we are clearly of opinion that it does not give to Stanley the right to hold the policy as security for the payment of this latter note. The assignment to him was to secure the payment of the note for $3,000, not what further amounts might become due to him from Sommer. Sommer has never made or undertaken to make any further assignment to Stanley, or given or undertaken to give to Stanley any greater rights in the policy.

The other questions raised are disposed of by the findings of fact made in the Superior Court.

The plaintiff, if he so desires, may have a decree allowing him to redeem the policy upon payment of the amount due on Sommer's note for $3,000, with interest and costs, within such time and upon such terms as may be determined by a judge of the Superior Court. If he shall not so redeem, his bill must be dismissed with costs.

*So ordered.*