MARY O'GASAPIAN, ·administratrix, vs. JEAN M.
DANIELSON & others.

Middlesex.    May 11, 1932. — September 12, 1933.

Present: RUGG, C.J., WAIT, FIELD, & DONAHUE, JJ.

*Equity Jurisdiction*, To reach and apply equitable assets, Clean hands,
Conveyance in fraud of creditors. *Attachment. Mortgage,* Of real
estate: unrecorded assignment. *Assignment. Fraud. Estoppel.*
*Bills and Notes,* Assignment.

One, for the purpose of defrauding his creditors, caused a mortgage and
mortgage note given to him to be taken in the name of a "straw,"
from whom he received an assignment under seal of the note and
mortgage in the statutory form which he did not record. The "straw"
furnished no consideration for the note. Previous to such transac-
tion, the "straw" had incurred indebtedness to one who brought a
suit in equity to reach and apply the note and mortgage to the satis-
faction of such indebtedness. It did not appear whether the note
had been indorsed by the "straw" to the assignee of the mortgage
or whether the "straw" still held the note. The assignee intervened
in the suit. A stipulation in lieu of an injunction provided that the
"straw" would not transfer the mortgage or note pending further
order of court. *Held,* that

    (1) The assignment of the note and mortgage by the "straw" was
effective to transfer to the intervener the interest of the "straw" in
the note even if he did not indorse it;

    (2) The seal on the assignment imported a consideration therefor,
if consideration were essential;

    (3) The "straw" had no equitable interest in the note or mort-
gage;

    (4) Assuming that the "straw" retained possession of the note,
the intervener, whether the note was negotiable or nonnegotiable,
was not estopped to assert his title thereto by reason of his conduct
in permitting the "straw" to retain possession and apparent owner-
ship: the plaintiff did not extend credit to the "straw" in reliance
upon such possession and apparent ownership;

    (5) The assignment, being prior to the equitable attachment by
the plaintiff, was superior to such attachment; the "straw" had
nothing which could be attached;

    (6) The intervener's failure to record the assignment was imma-
terial, since the mortgage was merely security for the note;

    (7) The circumstance, that the transaction whereby the note and
mortgage were taken in the name of the "straw" was in fraud of the
intervener's creditors, did not aid the plaintiff: the intervener in

this suit could prove his title to the note and mortgage without show-ing his fraud upon his own creditors, and he was not barred of relief by the doctrine that a party must come into court with clean hands with regard to his rights against other parties to the suit;

(8) Furthermore, the fraud of the intervener was not practised upon the plaintiff or upon any one whom he represented;

(9) The plaintiff was not entitled to reach and apply the note or the mortgage; following *Weinberg* v. *Brother*, 263 Mass. 61.

BILL IN EQUITY, filed in the Superior Court on January 9, 1931, described in the opinion.

The suit was heard by *Gray*, J. Material findings by him, and a final decree entered by his order, are described in the opinion. The plaintiff appealed.

*A. L. Brown*, for the plaintiff.

*G. Mooradkanian*, for the intervener.

FIELD, J. This suit in equity was brought by the ad-ministratrix of the estate of Charles O'Gasapian to establish debts of the defendants Danielson and Barsam to the in-testate and to reach and apply in payment thereof certain property including real estate standing in the name of the defendant Vartanian and a note secured by mortgage of real estate described in the third paragraph of the bill of com-plaint. (See G. L. [Ter. Ed.] c. 214, § 3 [7].) This para-graph alleges that "Carl M. T. Anderson and Ida M. Anderson are husband and wife residing in Boston and that they are the owners of certain real estate #22 Worcester Square in Boston . . . and that on September 2, 1930, they executed a promissory note secured by a first mort-gage on the said real estate in the sum of $5,000 to the defendant Jean M. Danielson, which mortgage is still held and owned by the said Danielson." A motion of one Sookikian, hereinafter referred to as the intervener, "that he be allowed to intervene . . . by being joined as party defendant" was allowed. No question is raised as to the propriety of the allowance of this motion. The intervener answered alleging his ownership of the note and mortgage referred to in the third paragraph of the bill, and praying that they "be released from further attachment in this suit and be adjudged and decreed to be the property of the defendant," the intervener. The trial judge made find-

ings of fact and rulings of law. Thereafter a decree was
entered dismissing the bill as to Barsam and the inter-
vener and the intervener's prayers for relief, establishing
the debts of Danielson, hereinafter referred to as the de-
fendant, to the plaintiff, and ordering a sale of real estate
standing in the name of Vartanian and the application of
a part of the proceeds thereof to the payment of the debts
so established. The plaintiff appealed. The evidence is
not reported.

The rulings and findings of the trial judge in regard to
the note and mortgage referred to in the third paragraph of
the bill of complaint are as follows: "With respect to the
allegations of paragraph 3 of the bill of complaint I find
that the defendant Danielson is the record holder of the
mortgage therein referred to. I find that for several years
prior to the date of said mortgage, the intervener, Sookikian,
was the real owner of said property and that title thereto
was in the name of his wife. In September, 1930, Sookikian
sold the property to the Andersons referred to in the bill of
complaint and by the terms of the sale a mortgage in the
sum of $5,000 was to be given to Sookikian to secure the
purchase price. Sookikian caused the mortgage and the
note which secured it to be taken in the name of the de-
fendant Danielson, and the mortgage was duly recorded.
Danielson furnished no part of the consideration for the
note but there were two claims pending against Sookikian
at the time and he caused the note and mortgage to be
taken in the name of Danielson in order to place this prop-
erty beyond reach of his creditors. Danielson knew of
these circumstances. Danielson, at the time of taking the
mortgage, gave Sookikian an assignment thereof duly exe-
cuted and acknowledged in the form introduced in evidence
as Exhibit 28 [This assignment was under seal, signed by
the defendant, and purported to "assign said mortgage and
the note and claim secured thereby" to the intervener.] but
the assignment has never been recorded, because to record
it would defeat Sookikian's purpose in taking title in the
name of Danielson. In other words, Sookikian has de-
liberately kept his assignment off the record in order to

carry out his purpose of defrauding his creditors.   In this situation the plaintiff's bill was filed on January 9, 1931, a *lis pendens* was filed in the registry of deeds on the same day, and on January 23, 1931, a stipulation signed by the parties hereto including Sookikian was filed in lieu of an injunction.   The defendants thereby stipulated that pending the further order of the court the defendant Jean M. Danielson would not assign, pledge or otherwise hypothecate the above mentioned mortgage or mortgage note.   No evidence was offered by either side as to whether the note had been indorsed by Danielson to Sookikian prior to the bringing of this bill.   There is no evidence that Danielson still holds the note.   The Andersons were not made parties to the bill and no attachment of the money due on the note was sought.   There was no evidence as to whether Sookikian had other assets at the time he placed this mortgage in the name of Danielson.   On these findings I rule that the plaintiff is entitled to no relief as to this mortgage."   The debts of the defendant to the plaintiff were created before September, 1930.

The plaintiff is not entitled to reach and apply to the payment of the defendant's debts the note or the mortgage in question.

The case of *Weinberg* v. *Brother*, 263 Mass. 61, goes far toward sustaining the conclusion that the defendant had no interest in the note or mortgage which could be reached and applied to the payment of his debts.   There the note and mortgage were taken by the real owner thereof in the name of the defendant who assigned them to the real owner. As here, the assignment of the mortgage was not recorded. It was held that the note and mortgage could not be reached by a creditor of the defendant for the reason that, in spite of the failure to record the assignment, the defendant retained no interest in the note, and the mortgage was security for such note and could not be reached and applied to the defendant's debts since the note itself could not be so reached and applied.   The court said, page 62, that the "plaintiff, by making the equitable attachment, is in no better position than that of the assignee of a mortgage after

the mortgagee has transferred title to the debt or note which the mortgage was given to secure." Persons dealing with title under the mortgage were charged by the record thereof with notice that it conveyed a title for security only and there is no requirement in the recording acts that the transfer of the note secured by the mortgage be recorded. The distinction between this situation and a situation where persons are dealing with title to real estate subject to a mortgage — that is, with· the equity therein — rather than, as here, with title under the mortgage appears in *Wolcott* v. *Winchester*, 15 Gray, 461. See also *Swasey* v. *Emerson*, 168 Mass. 118, 120–121. Compare *Stark* v. *Boynton*, 167 Mass. 443, 445. The principle, urged upon us by the plaintiff as controlling, that a creditor attaching real estate is in the position of an innocent purchaser for value and his attachment takes precedence of a prior unrecorded conveyance (*Waltham Co-operative Bank* v. *Barry*, 231 Mass. 270, *Hillside Co-operative Bank* v. *Cavanaugh*, 232 Mass. 157, 161) did not aid the plaintiff in *Weinberg* v. *Brother*, 263 Mass. 61, and cannot aid the present plaintiff unless the cases are distinguishable upon their facts. In neither case was credit extended to the defendant in reliance upon the fact that the record title to the mortgage stood in his name. Here the debts established against the defendant were created before the transaction between the defendant and the intervener took place.

The plaintiff, however, contends that the present case is distinguishable from *Weinberg* v. *Brother* for the reasons that here the note was not assigned by the defendant to the intervener and the transaction between the defendant and the intervener was a fraud upon the creditors of the intervener participated in by the defendant.

1. The findings do not bear out the contention that the defendant's interest in the note was not assigned by him to the intervener. The assignment was in statutory form (G. L. [Ter. Ed.] c. 183, Appendix [9]), was under seal and purported to assign the note as well as the mortgage. See *Merritt* v. *Harris*, 102 Mass. 326, 327–328. The intention to assign the note was clearly manifested. See *Cosmopolitan*

*Trust Co.* v. *Leonard Watch Co.* 249 Mass. 14, 19. Such an assignment was effective to transfer to the intervener the defendant's interest in the note even if the note was not indorsed (*Westminster National Bank* v. *Graustein,* 270 Mass. 565, 574) or delivered. *Strong* v. *Jackson,* 123 Mass. 60, 62. *Herman* v. *Connecticut Mutual Life Ins. Co.* 218 Mass. 181, 185. *Ingram* v. *Mandler,* 56 Fed. Rep. (2d) 994, 996. *Watson* v. *Goldstein,* 176 Minn. 18, 24. Since the assignment was under seal it was valid and irrevocable by the assignor even without actual consideration. Williston on Contracts, § 440. And, as between the assignee and the maker of the note, neither consideration nor notice to the maker was essential to an assignment. *Cosmopolitan Trust Co.* v. *Leonard Watch Co.* 249 Mass. 14, 19. See G. L. (Ter. Ed.) c. 107, § 72; Brannan's Negotiable Instruments Law (5th ed.) 472, 473. It follows, therefore, that the defendant had no equitable interest in the note or mortgage.

Since the assignment of the note to the intervener was prior to the plaintiff's equitable attachment, the intervener had the superior right. The underlying principle is that "an attaching creditor cannot stand on a better footing than his debtor, (if the assignment be not fraudulent as to creditors,) and if he attaches any property of his debtor, it must be attached subject to all lawfully existing liens created by his debtor. And, consequently, if his debtor have no equitable interest in a *chose in action,* the creditor cannot acquire any by his attachment." *Dix* v. *Cobb,* 4 Mass. 508, 512. See also *Norton* v. *Piscataqua Fire & Marine Ins. Co.* 111 Mass. 532, 536. This principle is applicable to the so called equitable attachment of a suit to reach and apply (*Thayer* v. *Daniels,* 113 Mass. 129, 131); in accordance therewith the plaintiff in *Weinberg* v. *Brother* could not reach and apply the note there in question to the payment of the debts of the defendant in that case, and the present case is not distinguishable. In no view of this case was the assignment fraudulent as to the defendant's creditors. And, as the assignment was under seal, the assignee is entitled to priority even if there was no actual considera-

tion for the assignment. *Putnam* v. *Story*, 132 Mass. 205, 208, 212. Compare, however, as to consideration, *Ferguson* v. *Winchester Trust Co.* 267 Mass. 397, 400, and cases cited.

The present case cannot be distinguished from *Weinberg* v. *Brother* by reason of the retention by the defendant here of the note in which he had no interest. In this connection we assume in favor of the plaintiff, though without so deciding, that the defendant retained possession of the note. This note, on the findings, was payable to the defendant. It does not appear clearly that it was negotiable. In any event the note was not indorsed by the defendant. If it was not negotiable the plaintiff could not reach it unless the intervener was estopped from asserting his title thereto by his conduct in permitting the defendant to retain possession and apparent ownership. *Herman* v. *Connecticut Mutual Life Ins. Co.* 218 Mass. 181, 185–187. However, there was no such estoppel. The plaintiff's intestate did not extend credit to the defendant in reliance upon his possession and apparent ownership of the note. And the plaintiff is in no better position if, as seems to be assumed, the note was negotiable. The difference in effect between a negotiable and a nonnegotiable instrument, when a question arises between competing assignees, recognized in *Gardner* v. *Beacon Trust Co.* 190 Mass. 27, 28, (see also *London Joint Stock Bank* v. *Simmons*, [1892] A. C. 201, 215), exists where the instrument has been delivered by the person having possession and apparent ownership thereof, and the rights of the transferee are governed by the negotiable instruments law. But, apart from such delivery, the rights of a later assignee against an assignee under a prior assignment depend on estoppel, as in the case of a nonnegotiable instrument. Here nothing equivalent to delivery of the note to the plaintiff or her intestate was shown and, consequently, the effect of a delivery need not be considered. See, however, G. L. (Ter. Ed.) c. 107, § 72. Obviously there can be no constructive delivery resulting from the bringing of this suit, the filing of notice of pendency thereof, or the stipulation in lieu of an injunction.

**2.** The plaintiff is not aided by the fact that the transaction between the defendant and the intervener was a fraud upon the creditors of the intervener participated in by the defendant. The plaintiff's contention on this point is, in substance, that she proved her case by showing that the record title to the mortgage was in the defendant, that the intervener had the burden of proving his ownership of the note and mortgage, that he cannot prove such ownership without showing his fraudulent purpose in the transaction, and that a court of equity will not give him relief or protection in such circumstances. Without discussing the soundness of this contention in other respects, it is a sufficient answer thereto to say that the intervener can prove his ownership of the note and mortgage without showing his fraudulent purpose.

A "court of equity will not lend its aid to relieve a party from the consequences of his fraud but will leave him where his fraudulent undertaking has placed him." *Caines* v. *Sawyer*, 248 Mass. 368, 374. This is an application of the principle that a party must come into court with clean hands with regard to his rights against other parties to the suit. *Beekman* v. *Marsters*, 195 Mass. 205, 214–215. But a conveyance fraudulent as to creditors is valid between the parties thereto though voidable by the creditors at their election. *Harvey* v. *Varney*, 98 Mass. 118, 120. Consequently relief is not denied to a party to a conveyance claimed to be fraudulent as to creditors if he can make out his case without reference to the fraudulent elements in the facts, in a suit to which no defrauded creditor is a party. *Lufkin* v. *Jakeman*, 188 Mass. 528, 531–533. See also *Schmidt* v. *Schmidt*, 216 Mass. 572, 577; *Magee* v. *Magee*, 233 Mass. 341, 346; *Mascari* v. *Mascari*, 255 Mass. 92, 97; *Hazleton* v. *Lewis*, 267 Mass. 533, 540; *Hyland* v. *Hyland*, 278 Mass. 112, 120. See, for cases in which the party having the burden of proof could not make out his case without reference to fraudulent elements in the facts, *Pollock* v. *Pollock*, 223 Mass. 382; *Verne* v. *Shute*, 232 Mass. 397; *Dunne* v. *Cunningham*, 234 Mass. 332, 335; *Caines* v. *Sawyer*, 248 Mass. 368, 374.

The intervener, as appears from the previous discussion in this opinion, can establish his ownership of the note and mortgage, after record title thereto in the defendant is shown, by proving the assignment thereof, though such assignment was not recorded. The assignment does not show on its face the fraudulent nature of the transaction, as did the express agreement in *Caines* v. *Sawyer*, 248 Mass. 368, 374. Nor does the note or the mortgage. And, unlike *Pollock* v. *Pollock*, 223 Mass. 382, 385, and similar cases, no proof outside the documents is essential to the intervener's case. The case more closely resembles *Lufkin* v. *Jakeman*, 188 Mass. 528. The fraudulent purpose of the intervener in reference to his creditors does not appear in the proof of his case "unless the parties go outside of that which is necessary to establish *prima facie* a right to relief. If the fraudulent purpose is introduced, it is to change the rights which the law would otherwise give as the result of such a transaction." Moreover, that fraudulent purpose was with reference to the claims of creditors who are not parties to the suit or represented by any party thereto. See *Lufkin* v. *Jakeman*, 188 Mass. 528, 531.

On the other hand, the plaintiff cannot establish her case by proof of the fraudulent elements in the transaction. Her intestate was not defrauded by the intervener, and she does not represent the defrauded creditors of the intervener. Furthermore, as already pointed out, the plaintiff has no greater rights in the note and mortgage than her debtor, the defendant, and the defendant could not deprive the intervener of his beneficial ownership thereof "on the ground that an inducement to the particular transaction was a purpose thereby to defraud a third person." *Lufkin* v. *Jakeman*, 188 Mass. 528, 533.

*Decree affirmed.*