JOINT BOARD OF SUPERVISORS OF DICKINSON AND OSCEOLA COUN-
TIES et al., Appellees, v. TITLE GUARANTY AND SURETY
COMPANY, Appellant.

**DRAINS: Bond—Scope of Liability.** Prior to the present statute
1  (Sec. 7462, Code of 1924), the bond given to guarantee the per-
formance of a drainage improvement contract did not cover the
claims for labor or materials.

**BONDS: Statutory Bond—Liability on Nonstatutory Conditions.** Prin-
2  ciple reaffirmed that the surety on a statutory bond is not liable
for the breach of conditions inserted in the bond but not required
by the statute.

*Appeal from Dickinson District Court.*—D. F. COYLE, Judge.

JANUARY 8, 1924.

OPINION ON REHEARING DECEMBER 11, 1924.

ACTION at law, to recover upon a bond given to secure the
performance of a written contract for the construction of a por-
tion of a certain drainage system. The material facts are stated
in the opinion. A jury was waived, and the cause tried to the
court. Judgment was entered for plaintiffs in the sum of
$1,924.08. The defendant Surety Company appeals.—*Reversed.*

*Whitney & Whitney* and *H. E. Narey,* for appellant.

*Francis & Owen, L. E. Francis,* and *W. C. Garberson,* for
appellees.

PRESTON, J.—A rehearing was granted in this case. The
opinion on the first submission affirmed the judgment against
defendant, on the assumption that Section 1989-a57, Code Sup-
plement, 1913, was in force at the time the bond
sued on was executed. The bond was executed
May 31, 1912, and Sections 1989-a57 and
1989-a60 were passed by the thirty-fifth general assembly

1. DRAINS: bond: scope of lia- bility.

(Chapter 155), and took effect July 4, 1913, more than a year after the bond was executed. This fact was overlooked, due partly to the fact, perhaps, that the work was done after the statute took effect. It is conceded by appellant, in its petition for rehearing and argument, that the court's attention was not called to the matter. Doubtless the same situation obtained in the district court. The former opinion was annulled by granting the rehearing; but we do not understand appellant, or either side, to complain of the opinion in its statement of the issues and facts. This being so, we shall now practically adopt the former opinion, down to the point where it becomes necessary to discuss the case under the law as it was prior to the later enactment of the statutes before referred to, and, so far as necessary, the effect, if any, of the passage of Sections 1989-a57 and 1989-a60, as applied to the facts in this case. The facts are practically undisputed.

The Issues: The plaintiff drainage district in its petition alleges that the district, acting jointly by and through the boards of supervisors of Dickinson and Osceola Counties, entered into a contract with A. W. Schweppe for the excavation for all tile in Joint Drainage District No. 1, and to properly lay all tile, fill all ditches therein according to certain plans and specifications, and to furnish all labor, tools, and machinery required in the completion of the improvement, and to receive therefor in full of all services the sum of $28,222. It is further alleged that the work was to be performed under the direction and supervision of the engineer having charge of the work, and that said engineer was to furnish to the county auditor of each county, monthly estimates of the amount of work done by the contractor and the amount earned by him; that, upon the filing of such estimates, warrants should be drawn in his favor for 80 per cent of the amount earned during the preceding month; and that, upon the completion of the improvement, certification by the engineer, and the approval of the work by the boards of supervisors, warrants should issue in payment of the entire balance due the contractor. The contract further provided that, if the contractor failed to prosecute the work according to contract and the plans and specifications, and damage to the ditch or district resulted therefrom, on account of such delay, second

party should be liable therefor, and the district might recover such damage by an action upon the contractor's bond, or might retain from the amount otherwise due said contractor such sum as would reimburse the drainage district for such damage.

The defendant surety company, in connection with said contract, and as security for the faithful performance thereof, executed its written obligation, by the terms of which the company became bound to the said drainage district in the sum of $7,000. It is further alleged that the plaintiffs have performed each and every condition of the terms and provisions of the contract, but that the contractor failed to perform, and that, because of said failure and his abandonment of the work, plaintiffs were obliged to and did complete the performance of said contract, at a cost to the district in excess of the contract price. Judgment is prayed in the sum of $7,000, against the surety.

For answer, the defendant surety company filed its general denial, but admits the execution of the contract and the bond pleaded and attached to plaintiffs' petition. It is further pleaded in answer that the action under the said bond is barred by limitation, under the terms and conditions of the bond, in that more than six months had expired from the date stipulated in the contract for the completion of the work, before this suit was commenced, and that all of plaintiffs' alleged damages have been paid, satisfied, and discharged, according to the terms and conditions of the contract.

In reply thereto, plaintiffs state that the surety company had full knowledge and notice of the delinquencies alleged in their petition, and that the company accepted premiums thereafter matured, and, having so accepted said premiums, is estopped from making and maintaining its defense, predicated on the specific limitation recited in said bond.

The Facts: The contract with plaintiffs obligated the contractor to excavate for tile, properly lay same, fill the ditches, construct certain bulkheads according to specifications, and to furnish all labor, tools, and machinery required for that purpose. The surety company gave its written bond to "truly indemnify and save harmless" the drainage district from any "loss resulting from the breach of any of the terms, covenants and conditions of" plaintiffs' contract with Schweppe. The

latter partially performed, and defaulted. Plaintiffs were obliged to complete the contract, and are now suing to recover the costs incidental thereto, which include labor claims.

The question involved is whether, under the statute, the contract, and the contractor's bond, the defendant, surety on such bond, is liable for labor claims and claims of materialmen. And this is so even though deductions from retained percentages are so figured as to pay claims other than the labor and materialmen's claims, and leave the last named unpaid. In this case, Schweppe completed or performed the contract to the amount of $25,122. He failed to pay all laborers and materialmen; and when he abandoned the contract, he owed considerable sums, which were later represented by claims filed with the county auditors. The trial court determined the cost of completing the contract after its abandonment by Schweppe to be $7,994.06, and ascertained the credit allowable because of such completion to be the sum of $3,100, or the difference between the amount earned by Schweppe ($25,122) and the contract price ($28,222). The court further determined the percentage amount withheld by the district, under the law and the terms of the contract, to be $5,047.70, and ascertained the amount to be deducted from the retained percentage by reason of the claims filed and proved, to be $2,077.72. This left a balance in the percentage fund to the credit of appellant, $2,969.98. A judgment was entered against defendant for the net balance in the sum of $1,924.08.

The statute in force at the time defendant became surety, provides:

"The successful bidder shall be required to execute a bond with sufficient sureties in favor of the county for the use and benefit of the levee or drainage district in an amount equal to twenty-five per centum of the estimated cost of the work so let, * * * as security for the performance of his contract. * * *" Section 1989-a8, 1913 Supplement.

That statute does not require the giving of a bond by the contractor, conditioned that he will pay labor claims and claims of materialmen. Neither does the contract itself cover such claims. The contract provides:

" (10)   To secure faithful performance of the terms of this contract and the full and proper completion of said work, the

party of the second part has executed herewith bond in the sum of $7,000 as by law provided, * * *

"(11) It is further understood and agreed between the parties hereto, that in case second party fails to complete said work in the time provided for in this contract, he shall be liable to first party for any damages caused by such failure and delay, and the amount of such damage may be deducted from the sums unpaid to secure first party or action may be brought upon said bond."

Neither does the bond cover items for labor and material-men's claims. It provides:

"The condition of the foregoing obligation is such that if the said principal shall well and truly indemnify and save harmless the said obligee from any pecuniary loss resulting from the breach of any of the terms, covenants, and conditions of the said contract on the part of the said principal to be performed, then this obligation shall be void; otherwise to remain in full force and effect in law; provided however that this bond is issued subject to the following conditions."

One of the conditions is that, in case of default on the part of the contractor, the surety shall have the right, if it so desire, to assume and complete or procure the completion of said contract; and in case of such default, the surety shall be subrogated and entitled to all the rights of the principal to all deferred payments, retained percentage, and credits, etc. Another condition is that the obligee (the drainage district) "shall retain the last payment and reserve due the principal * * * until the expiration of the time within which liens or notices of liens may be filed."

Section 1989-a8, 1913 Supplement, before quoted, was amended by the thirty-sixth general assembly (Chapter 138), Section 1989-a8, Supplemental Supplement (effective in 1915), by inserting a clause after the word "contract," as follows:

"And for the payment as they become due of all just claims for labor performed and material used in the completion of said contract."

Section 1989-a57 (Chapter 155, Acts of the Thirty-fifth General Assembly), which was supposed to govern, but which, as said, did not take effect until July 4, 1913, authorizes the

filing of claims against the funds by laborers and other subcontractors in drainage proceedings.

Section 1989-a60 of the same act provides: ''This act shall not be deemed retroactive nor affect pending litigation.''

Appellee contends that the claims for labor and material could have been filed under Section 3102 of the Code, and that they already had such right without the enactment of Section 1989-a57; but we think this is not quite accurate. Section 3102 provided for filing such claims for labor and materials furnished for public buildings, bridges, etc. Section 1989-a57 broadened the other section, so as to include drainage projects. Appellant concedes in argument that it would be liable herein for labor and materialmen's claims, if the bond had been given under the provisions of the statute before set out, which were subsequently enacted. It is contended that it is liable only for a breach of the bond or contract, and not for labor and materialmen's claims. We think this contention must be sustained.

Since the original submission and determination of this case, we have had occasion in two cases to pass upon the question of the liability of a surety under a statutory bond. *Schisel v. Marvill,* 198 Iowa 725; *Nebraska Culvert & Mfg. Co. v. Freeman,* 197 Iowa 720. These cases are not cited in argument, doubtless because they were decided after the original submission, and perhaps after the arguments were made. In the first case, the question was fully discussed, and the case was followed in the later case. It is unnecessary to now repeat the discussion. The holding was that liability of a surety under a statutory bond is measured by the statute. In those two cases, the bond given was broader than the statute. Not so in the instant case.

2. BONDS: statutory bond: liability on non-statutory conditions.

It is argued by appellee that, since the work was not performed and materials furnished until after the enactment of Sections 1989-a57 and 1989-a60, before quoted, the bond was in force when the work was done, and that the claimants had the right to file their claims. Conceding, for the purpose of the argument, without deciding, that this might be so, as between claimants and the district, nevertheless we think that, under the decisions just cited, that does not meet the situation. It is fur-

ther argued by appellee that, under one of the exceptions in the bond before quoted, it was stipulated that the money retained should be held until the cancellation and discharge of such liens, if any, and that the only way of securing cancellation of the liens is to pay them; and further, that, if so paid by the district, the amount thus paid will not remain available to appellant as a credit, and if the district must account to appellant therefor, the district has lost that amount; and again, that the district may not escape payment, and if it pays, it must pay from the funds withheld for that very purpose, or from a further tax imposed upon the lands, and if the latter, the district will not be held blameless. The argument is not very clear to us. As to the first proposition, it was the district which was to retain the percentage, and, under the provision of the bond quoted, the bond was subject to that condition, that the district should retain the money. The district had the money. If the argument is that the district failed to retain it, or paid it to others than those having claims, and that the district was at fault, this would not be a matter for which the surety would be liable. It is liable only for the defaults of the contractor.

Without further discussion of other phases of the argument, we reach the conclusion that, for the reasons given, and under the record as it now stands, the surety company is not liable for these claims. The trial court erred in holding otherwise. The judgment is reversed, and the cause remanded.— *Reversed.*

Arthur, C. J., and Evans, Stevens, and Vermilion, JJ., concur.