OTTUMWA BOILER WORKS et al., Appellees, v. M. J. O'MEARA & SON, Appellee; SOUTHERN SURETY COMPANY, Appellant (and other cases).

578

April 3, 1928.

Rehearing Denied September 28, 1928.

*Thomas A. Goodson* and *Thomas J. Guthrie,* for appellant.

*Oliver & Oliver* and *M. A. Roberts,* for M. J. O'Meara & Son, appellees.

*H. C. & H. C. Taylor,* for National Bank of Bloomfield and Hercules Manufacturing Company, appellees.

*Jaques, Tisdale & Jaques,* for Ottumwa Iron Works, appellee.

*John F. Scarborough,* for J. P. Toombs Estate, appellee.

*Verne J. Schlegel* and *E. Rominger,* for all other claimants, appellees.

Faville, J.—On April 29, 1922, the contractor, O'Meara & Son, entered into two contracts with the board of supervisors of Davis County for the construction of two drainage districts, one known as the Fox River Drainage District No. 3, and the other as the Wyancondah Drainage District No. 1. The Southern Surety Company furnished the contractor's bond for each of said projects. The contractor entered upon the work of each of said projects and prosecuted the same for a time, and incurred expense in so doing. The county, under the contract, retained 20 per cent of the contractor's earnings. Various notices and negotiations were had, which finally resulted, on July 7, 1924, in the surety company's taking over the contract in each of said projects and prosecuting the same to a conclusion.

After taking over said work, the surety company paid certain of the indebtedness that had been incurred by the contractor, to the amount of $7,231.16. After taking over the work, the surety company received in payment of said contracts the total amount of $8,108.82. Lienable claims are conceded, and are not involved in this appeal, to the amount of $343.71, leaving a balance in the hands of the county auditor of $8,039.47. Certain claims which were established by the trial court are not involved in this appeal.

I. We first consider the conflicting claims of the appellant and the National Bank of Bloomfield. The surety company executed the bonds in question on or about April 29, 1922. After entering upon the work of construction of the ditches in question, the contractor borrowed money of the National Bank of Bloomfield, and at the date of the trial, there was due from the contractor to said bank, including interest, costs, and attorney fees, as found by the trial court, the sum of $3,546.54. This was a general loan of funds, which were checked out and used by the contractor as he saw fit. On November 16, 1923, the contractor made a written assignment to the said bank of all of his earnings under his contract, to secure his indebtedness to said bank. There were certain lienable claims duly filed against the fund due to the contractor under his contract. After the surety company took over the work, it paid the said lienable claims to the parties entitled thereto, and the surety company now claims the right to be subrogated to the rights of said claimants against said fund, superior to any claim of the National Bank of Bloomfield therein. This contention of the appellant's as to said amount of existing lienable claims so paid by it must be sustained. The contractor was required by statute to furnish a bond. The statute also provides for certain lienable claims which may be filed against the funds accruing to the contractor under such a contract. The bank was bound to know, when it took an assignment of said funds from the contractor, that the contractor had been required by statute to furnish a bond for the performance of said contract, and that certain classes of claims were by statute lienable against the fund accruing to the contractor. Such lienable claims were superior to any right the bank could acquire in the fund by virtue of its assignment.

Where the surety on said bond has paid such lienable claims, it is entitled to be subrogated to the rights of such lienable claimants in said fund to the amount so paid by it, and being so subrogated, its right to the amount of said lienable claims so paid is superior to the rights of the bank as assignee of the contractor. In the recent case of *Monona County v. O'Connor*, 205 Iowa 1119, we said:

"It is the contention of appellant that, as it was compelled as surety to pay provable claims, and to complete the contract at great expense, it is subrogated to the rights of its principal, and that it is entitled to the balance due. The question, therefore, at this point is: Have claimants or the surety the prior right to the fund? An assignee of the contractor occupies the same position as his assignor. The claims of the assignee are no higher or greater than those of the contractor. This being true, the surety who has paid the obligations of the principal has, by right of subrogation, the prior right to the fund. * * * But two cases directly in point have been called to our attention: *Lanstrum v. Zumwalt*, 73 Mont. 502 (237 Pac. 205), and *Wasco Co. v. New England Equitable Ins. Co.*, 88 Ore. 465 (172 Pac. 126). These cases support the foregoing conclusion."

See, also, *Carr Hardware Co. v. Chicago Bond. & Surety Co.*, 190 Iowa 1320; *Prairie State Bank v. United States*, 164 U. S. 227 (41 L. Ed. 412); *State ex rel. Southern Sur. Co. v. Schlesinger*, 114 Ohio St. 323 (151 N. E. 177); *New Amsterdam Cas. Co. v. City of Astoria*, 256 Fed. 560; *Henningsen v. United States Fid. & Guar. Co.*, 208 U. S. 404 (52 L. Ed. 547); *Duncan v. Guillet*, 62 Colo. 220 (161 Pac. 299); *Maryland Cas. Co. v. Shafer*, 57 Cal. App. 585 (208 Pac. 194); *Derby v. United States Fid. & Guar. Co.*, 87 Ore. 34 (169 Pac. 500).

II. The bonds of the surety company in question were executed on or about April 29, 1922. These bonds were executed pursuant to a written application therefor, made by the contractor to the surety company. Among other things, the said application contained the following provision:

"And also we, the undersigned, do hereby convey and assign unto the said company any and all payments, funds, moneys, or property due or to become due to the undersigned as provided in said contract, and also all of our rights in and to all

subcontracts which may have been or may hereafter be entered into, and the materials embraced therein.''

The application containing this assignment was not filed for record in either the office of the recorder of deeds of Davis County or the office of the county auditor of said county, prior to July 7, 1924. On November 16, 1923, the contractor made a written assignment to the bank of all of his earnings under his said contract, to secure his indebtedness to said bank. This assignment was filed with the county auditor on December 3, 1923. At this point, the question arises as to which of said assignees is entitled to said fund. The question of priority between two assignees of the same fund has frequently been before the courts. There is great diversity in the decisions. The numerical weight of the authorities favors the rule that the assignee first giving notice of his claim to the debtor is preferred to the assignee who is prior in time, but who has not given such notice. This rule is recognized by the English courts, and seems to be the rule in California, New Jersey, Ohio, Missouri, Mississippi, Virginia, Tennessee, Vermont, Maine, Pennsylvania, Maryland, and Oklahoma. It is held, as between assignees of a common fund, that the one prior in point of time has priority, although he has given no notice of his assignment to either a subsequent assignee or the debtor, by the Supreme Court of the United States, and by the courts of New York, West Virginia, Minnesota, Massachusetts, Oregon, Texas, and Kentucky. The cases are collected and reviewed in a valuable note to the case of *Salem Tr. Co. v. Manufacturers' Fin. Co.*, 264 U. S. 182, as reported in 31 A. L. R. 867.

The only case from this court touching the question that is cited by counsel is *Merchants & Mechanics' Bank of Chicago v. Hewitt*, 3 Iowa (Clarke) 93. In said case it appeared that the defendant Hewitt sold certain corn to one Atwood. The corn was left in the possession of Hewitt. Atwood accepted a draft drawn on him for payment of the purchase price, and the draft was protested and never paid. Hewitt gave to Atwood a written receipt for the corn, which remained in his possession, and this receipt was assigned by Atwood to the plaintiff bank, and suit was brought thereon against Hewitt to recover the value of

the corn. The discussion in the opinion largely concerned the question of the assignability of the written receipt. We held that the instrument was assignable by indorsement, and that the assignee might sue on it in his own name, subject to any defense or set-off, legal or equitable, which the maker, Hewitt, had against Atwood, the purchaser of the corn. In the course of the opinion we said:

"In order to constitute a valid assignment of an instrument of writing like the present, notice must be given to the maker. If without such notice the maker deliver the property to the assignor, he will be discharged. And if, after assignment, another person obtain a second assignment, and first give notice of his equity, he will be preferred to the first assignee. Parsons on Contracts, 196; *Richards v. Griggs*, 16 Missouri 418; *Dearle v. Hall*, 3 Russell Ch. 1; 2 Story's Eq. Jurisprudence, Sections 1047, 1057."

It is to be noticed that the question in said case did not involve a claim between two assignees. It was the original assignee who was plaintiff in the action, and the statement in the opinion in regard to priority between assignees must be regarded as dictum. So that the identical question now presented for consideration does not seem to have been previously decided by this court.

The argument in behalf of the rule that mere priority of notice does not give priority of right as between successive assignees of a chose in action is set forth by the Supreme Court of the United States in *Salem Tr. Co. v. Manufacturers' Fin. Co.*, supra, in which the authorities are reviewed and discussed. The court said:

"There is no decision of this court which sustains the contention that, as between successive assignees of the same chose in action, mere priority of notice gives priority of right. It seems to us that the better reasons are against such a rule. By the first assignment, the rights of the assignor pass to the assignee. The creditor has a right to dispose of his own property as he chooses, and to require the debt to be paid as he directs, without the assent of the debtor. See Story, Equity Jurisprudence (11th Ed.), §1057. Notice of the assignment to the debtor adds nothing to the right or title transferred. A subse-

quent assignee takes nothing by his assignment, because the assignor has nothing to give. See *Judson v. Corcoran*, supra, 614 [17 How. (U. S.) 611 (15 L. Ed. 231)]. If, after assignment, the assignor receives payment from the debtor, he is liable to the assignee. Failure of the first assignee to give notice does not divest him of any title or right, or vest any claim in a sub-sequent purchaser. It cannot injuriously affect an intending purchaser who makes no inquiry of the debtor concerning the assignor's title. The debtor is not bound to answer inquiries concerning the assignor's title, and there can be no assurance that an intending purchaser can ascertain the incumbrance by inquiry of the debtor having notice of the earlier assignment. * * * In a case where, as here, the later assignee has made no inquiry of the debtor in advance of taking his assignment, there is no analogy between the giving of notice by the first assignee to the debtor and the taking of possession of tangible personal property by a purchaser. It is impossible in any real sense to transfer possession of accounts receivable or the like, and as to them, an assignee does not become clothed with the indicia of ownership, as does one taking possession of tangible things. It is not accurate to say that notice is necessary to perfect title in the assignee of a chose in action. While failure to give notice may become an important element in a situation, from which equitable estoppel may arise against the first assignee, it cannot be said to be necessary to, or an element in, acquisition of title. The result will be the same if it be assumed that each bona-fide purchaser takes merely an equity in the chose in action assigned. If equities are equal, the first in time is best in right. Otherwise, the stronger equity will prevail. While there are contingencies which entitle the second to prevail over the first assignee, we hold that mere priority of notice to the debtor by a second assignee, who lent his money to the assignor without making any inquiry of the debtor, is not sufficient to subordinate the first assignment to the second."

We are disposed to adopt the rule and reasoning announced by the highest tribunal in the land. It appears to us that it is logical and consistent, and we approve of and adopt it. We hold at this point that the appellant, being in fact the first assignee, was entitled to priority over the bank, the second as-

584

signee, although the latter first gave notice of its assignment to the county official.

III. Numerous claimants contended that they had provable claims against the fund accruing to the contractor, and certain of said claims which were established by the trial court as lienable are excepted to by the appellant. The statute in force under which the contract in question was entered into is Section 1989-a57 of Code Supplement, 1913. A portion of said statute is as follows:

"Every mechanic, laborer, or other person who as subcontractor, shall perform labor upon or furnish materials for the construction of any drainage ditch provided for in this chapter, shall have a claim against the funds provided for the payment of said ditch and improvements for the value of such services and material not in excess of the amount of the contract price for which no warrants shall have been issued at the time of the filing of said claim."

There was also then in effect Chapter 347, Acts of the Thirty-eighth General Assembly, a portion of which is as follows:

" * * * which bond shall run to said body, board, committee, or other public representative, for its use and benefit and for the use and benefit of all persons, firms and corporations who shall perform any labor or furnish any material, including fuel, in the carrying out of such public contract, and shall have as one of its conditions, the following paragraph:

"Now, therefore, the condition of this obligation is such that if the principal shall faithfully perform the contract on his part, and satisfy all claims and demands, incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default, and shall pay all persons who have contracts directly with the principal for subcontractors for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

We considered this statute in *Standard Oil Co. v. Marvill*, 201 Iowa 614, as to a claim for "fuel."

We also had the statute under consideration in the case of *Teget v. Polk County Drainage Ditch*, 202 Iowa 747, wherein we said:

"The language thereof is clear, and little subject to misconstruction. The lien provided is for the benefit of every mechanic, laborer, or other person who, as subcontractor, performs labor upon or furnishes material for the construction of the drainage ditch. Manifestly, the grocer who sells groceries; the butcher who sells meat; the dealer who sells eggs or other provisions; the merchant who sells clothing to the contractor for his own or his employees' use; the banker who loans money to the contractor, do not come within the purview of the statute. They have neither performed labor upon, nor furnished material for, the construction of the improvement."

We further said:

"The manifest purpose of the statute is to protect workmen employed upon public improvements, or materialmen who furnish material therefor, and was not intended to apply to those who have furnished food and clothing to the contractor, or have loaned him money, or to one who may furnish repairs for the machinery or equipment with which the work is done, * * * *Empire St. Sur. Co. v. City of Des Moines*, supra [152 Iowa 531], is directly applicable to this proposition."

It therefore follows that all of the various claims filed in this cause that did not properly come within the terms and provisions of the statute were not lienable claims, and could not be established as such against the fund.

But it is contended that, even if the claims were not lienable under the provisions of the statute, the several claimants are entitled to have the same established as against appellant, because of the terms and provisions of the contract and of the appellant's bond. In other words, it is contended that the contract, by its terms, is broader than the statute, and that the appellant's bond, being conditioned upon full and complete performance of the contract on the part of the contractor, binds

the appellant under said contract and bond for the payment of the several claims.

In *Nebraska Culv. & Mfg. Co. v. Freeman*, 197 Iowa 720, we said:

"But assuming, as contended by plaintiff, that the bond does include binding conditions and obligations not required by the statute, and is broader than the statute, this court is committed to the rule that liability may not be predicated upon provisions of a statutory bond which are broader than and beyond the requirements of the statute providing for the bond, and under which the bond is given. Such is the effect of our holding in *United States Fid. & Guar. Co. v. Iowa Tel. Co.*, 174 Iowa 476. The bond sued on in the instant case is a statutory bond, given under Chapter 347, Acts of the Thirty-eighth General Assembly. Liability may not be predicated upon the terms and conditions of a statutory bond which are beyond the requirements of the statutes."

See, also, *Joint Board of Supervisors v. Title Guar. & Sur. Co.*, 198 Iowa 1382; *Schisel v. Marvill*, 198 Iowa 725; *Philip Carey Co. v. Maryland Cas. Co.*, 201 Iowa 1063.

It follows that the liability of the appellant under the bond in the instant case is limited to the statutory limitations of the bond.

Under the foregoing rules of law, we will consider some of the claims involved in this appeal. It appears that the claimant Ottumwa Iron Works is operating a machine shop and foundry at Ottumwa, and did work for the contractor in furnishing material for the repair and betterment of the machinery which the contractor was using in the construction of the improvement. For illustration: this claimant furnished steel shafts and did machine work on the apparatus which the contractor was using. No question is raised as to the furnishing of the labor and material upon the machinery of the contractor, nor the amount due therefor. The claim of the Ottumwa Boiler Works is for material furnished and used in connection with the machinery employed by the contractor in the construction of the improvement. The account appears to be for labor performed on the contractor's machine, for such work as welding, forging, etc. The claim of the Ottumwa Box Car Loader Com-

pany is also for material furnished and labor expended in repairing the dipper used by the contractor on the ditch. The claim of the Centerville Foundry Manufacturing Company is for repairing the dipper of the ditch machine used by the contractor in the construction of the ditch. The claim of Rosenbaum & Son was for steel rope and other like material for use upon the ditching machine. The claim of the Hercules Manufacturing Company was for repair of broken parts or worn-out parts of the machine. The claim of Minnie Toombs, administratrix, was for blacksmithing and repairs upon the machine of the contractor. The claim of Tunell was for oil and grease furnished in the operation of the machine. The court established each of the foregoing as lienable claims, and directed the same to be paid from the funds in the hands of the county auditor. The statute evidently contemplates providing for lienable claims for those who perform labor upon or furnish material for the construction of the drainage ditch itself. "Material" is now defined in Section 10299, Code of 1924. As construed by us in the *Teget* case, supra, the lien statute "was not intended to apply to those who have furnished food and clothing to the contractor or have loaned him money, or to one who may furnish repairs for the machinery or equipment with which the work is done, or do labor thereon." Under the statute and our previous decisions, it must be held that the claims for labor and material furnished in repairing the machinery of the contractor were not lienable, and that said claimants were not entitled to have the same established as liens against the funds in the hands of the county auditor.

IV. A question arises as to the proper amount that the appellant surety company can charge against the contractor, O'Meara & Son, for the expenditures made by the appellant in completing said contract. After the appellant took over the contract and entered upon the business of completing the work in the two projects, it incurred certain expenses in regard therewith which it insists should be charged against O'Meara & Son. One of these items is the sum of $925, which the appellant claims the right to charge to O'Meara & Son, as the salary of appellant's superintendent, Craig. The trial court found that Craig had been acting as superintendent of the two projects, and

fixed the amount properly chargeable for his services at $475. From a careful examination of the record, we are constrained to acquiesce in this holding.

One item in controversy is for $873.50, for a watchman or custodian of a dredging machine that belonged to the contractor, and which was taken over by the appellant. We are disposed to concur in the conclusion of the trial court, that the record fails to show that this item was a necessary or proper charge, and that the same should be disallowed.

It appears that the contractor, O'Meara & Son, had incurred an indebtedness to the Power-Penn Oil Works. This claim was for supplies furnished to the contractor, but the Power-Penn Oil Works did not file any claim for the amount due it, or seek to hold the fund due the contractor. On the contrary, it obtained a chattel mortgage upon the ditching machine from the contractor, and subsequently placed the same in the hands of the sheriff for foreclosure and sale under the terms of said mortgage. The appellant purchased said machine at said foreclosure sale for the amount of $2,292.11. The appellant gave the contractor a repurchase agreement, under which the contractor could have acquired title to the machine by the payment of the said amount within ninety days. This, however, was not done. As we understand the record, the title to this machine vested in the appellant by virtue of the purchase at the foreclosure sale. The item was not properly chargeable against O'Meara & Son, and the conclusion of the trial court in respect thereto must be sustained.

It also appears that the Monighan Machine Company furnished certain repairs to the contractor. No claim was filed for these repairs, and the contractor gave notes for the same in the sum of $480. These notes were subsequently paid by the appellant. Appellant's contention is that it is entitled to establish the amount of said notes as lienable claims, and is entitled to be subrogated to said amount. Whether or not the amounts for which the notes were given might have been properly filed as lienable claims, we do not determine; but they were not so filed. From the record it appears that the contractor owed an indebtedness for which he gave his notes to his creditor, and the notes were paid off by the appellant. We are not concerned at this point with the general liability of the contractor to the

appellant for the amount so paid for said notes, but the situation as disclosed by the record is not such as to make applicable the doctrine of subrogation in behalf of the appellant and to establish thereunder the amount due on said notes as a lienable claim against the fund in question.

As to each and all of the several items embodied in the decree of the trial court to which reference is not made in this opinion, our conclusion is that the decree of the trial court is correct, and should be affirmed. The decree will be modified in the manner indicated herein.—*Modified and affirmed.*

STEVENS, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.