GREELEY COUNTY, APPELLEE, V. FIRST NATIONAL BANK OF COZAD, APPELLEE: PAUL NELSON ET AL., APPELLANTS.

FILED APRIL 27, 1934. No. 28877.

*Morsman & Maxwell* and *Lanigan & Lanigan*, for appellants.

*Cook & Cook* and *T. J. Howard*, contra.

Heard before ROSE and PAINE, JJ., and LIGHTNER, REDICK and THOMSEN, District Judges.

LIGHTNER, District Judge.

Interpleader under section 20-325, Comp. St. 1929, to determine the ownership of a fund. The contest is between two successive assignees of a claim against Greeley county, namely, the First National Bank of Cozad and Paul and Mary J. Nelson. The district court found in favor of the bank and Nelsons are appealing. It will be more convenient in this opinion to refer to the parties as the bank and the Nelsons. The county of Greeley is the plaintiff and nominally an appellee, but has no interest in the outcome.

The Nelsons claim the fund on the ground that they through their agent, Solomon, received the first assignment of it, and the bank claims the fund because it gave the first notice to the debtor, Greeley county, and for other reasons which will be referred to later.

Stating the facts, which are not in serious dispute, more fully, it appears that in July, 1931, Standard Bridge Company of Omaha, Nebraska, sold to Greeley county, a car-load of lumber for $1,620 f. o. b. point of delivery. The lumber was delivered in July, 1931, and the freight in the sum of $628.75 was paid by Greeley county, leaving a balance due the Standard Bridge Company of $991.25.

One E. G. Solomon of Omaha, Nebraska, was the investment agent of the Nelsons. On August 3, 1931,

Standard Bridge Company sold and assigned the account against Greeley county to said E. G. Solomon, the assignment being in the following words:

"Omaha, Neb. August 3, 1931.

"For value received, I hereby sell, assign, transfer and set over to E. G. Solomon all my right, title and interest in and to any and all moneys arising or coming to me from the county of Greeley Neb. by reason of a certain claim No.———— against the said county for bridge material amounting to one thousand six hundred twenty and no/100 dollars, which said claim was filed with the county clerk on the 1st day of August, 1931. At its own expense the Standard Bridge Company may collect the above sum and upon such collection hold the same for the assignee hereunder and for the use of such money from this date until such assignee is fully repaid the Standard Bridge Company shall pay such assignee interest at the rate of 7 per cent. per annum from Aug. 3, 1931, until paid in cash or registered warrants.

"And I hereby authorize, empower, direct and instruct the county clerk of said county to assign and deliver all warrants therefor to E. G. Solomon.

"Standard Bridge Company, Assignor,
"By J. H. Vastine, Auditor."

With this assignment the Standard Bridge Company delivered to Solomon a copy of the lumber bill against Greeley county. When he purchased the account, Solomon paid for it with money of the Nelsons in his possession, and notified them of the purchase, but kept the copy of the lumber bill and the assignment in his own possession. It does not appear that Standard Bridge Company had any knowledge of the Nelsons' connection with the matter.

At the time of the assignment of the account to Solomon, the account had not been filed as a claim in the county clerk's office of Greeley county. Solomon did not file the account and assignment, or either of them, with the clerk of Greeley county, but on August 11, 1931,

Standard Bridge Company in its own name filed the ac-count with the county clerk of Greeley county, as a claim due to Standard Bridge Company.

On said 11th day of August, 1931, an agent of Standard Bridge Company procured from the county clerk of Greeley county a certified copy of the claim so filed, such certified copy being as follows:

"Greeley, Nebr. Aug. 11, 1931.

"Standard Bridge Co.

"Omaha, Nebr.

"In Account with Greeley County

Contract #329/31 L. O. 9749—Car—S. P. 66888

Cold seasoned Fir Lumber Standard Sawn

| | | |
|---|---|---|
| 50 3x12 24'— 3600' @ $37.50 per M | | $ 135.00 |
| 100 3x12 20'— 6000' @ $37.50 per M | | 225.00 |
| 700 3x12 16'—33600' @ $37.50 per M | | 1,260.00 |
| | | $1,620.00 |

"I hereby certify that this is an exact copy of a claim on file in this office for payment.

"D. W. Healey, County Clerk.

"I, E. J. Cejda, being duly sworn, do depose and say the above account is just and correct; that the same is due as herein charged, and that the amount claimed, after allowing all just credits, is wholly unpaid.

"E. J. Cejda.

"Subscribed and sworn to before me this 11th day of Aug. A. D. 1931.

"(Seal County Clerk)      D. W. Healey, County Clerk."

Thereafter, and on August 25, 1931, an agent of Standard Bridge Company, with the said certified copy of the claim in his possession, called at the First National Bank in Cozad, and sold and assigned the account and claim to the bank for the sum of $1,620, the bank paying the Standard Bridge Company $1,400 and crediting it $220 on an account owing by the company to the bank growing out of another transaction. At said time the Standard Bridge Company, by its agent, delivered to the bank the

said certified copy of the claim, and also executed and delivered to the bank an assignment, in duplicate, in the following words:

"Omaha, Neb. August 25, 1931.

"For value received, I hereby sell, assign, transfer and set over to First National Bank, Cozad, Nebr. all my right, title and interest in and to any and all moneys arising or coming to me from the county of Greeley by reason of a certain claim No. ———— against the said county for car fir lumber amounting to sixteen hundred twenty and no/100 ($1,620) dollars, which said claim was filed with the county clerk on the 11th day of August, 1931.

"Standard Bridge Co. hereby guarantees the payment of the above principal, together with interest at the rate of ten (10) per cent. per annum from August 25, 1931, until paid in cash or county warrant.

"And I hereby authorize, empower, direct and instruct the county clerk of said county to assign and deliver all warrants therefor to First National Bank, Cozad, Nebr.

"Standard Bridge Company, Assignor,

"By W. L. Reynolds, Agent."

"In the presence of W. T. Thompson."

On August 26, 1931, the bank wrote the county clerk of Greeley county that it had purchased the claim from Standard Bridge Company, and inclosed with the letter the above assignment. This letter was sent by registered mail and received by the county clerk of Greeley county on August 28, 1931. The assignment was filed and retained by the county clerk, and the letter returned to the bank with a notation thereon by the county clerk that the claim was now $991.25, as freight in the amount of $628.75 had been deducted.

E. G. Solomon died in November, 1931, and the copy of the account and assignment thereof were found in his effects, and in December, 1931, the administrator of his estate delivered to the Nelsons an assignment of the account. On or about December 24, 1931, the Nelsons

mailed to the county clerk of Greeley county a notice of a claim to the account. This was the first notice ever given to the county that either Solomon or the Nelsons had any interest therein. The assignment from Standard Bridge Company to Solomon and the assignment from Solomon's administrator to the Nelsons were not filed with the county clerk of Greeley county until in January, 1932.

The bank purchased the claim in August, 1931, for value, with no notice of any right or claim of Solomon or of the Nelsons therein, and no knowledge of any such right or claim until December or January following.

Petition for adjudication of bankruptcy of Robert Z. Drake, doing business as Standard Bridge Company, was filed January 21, 1932, and adjudication of bankruptcy was on March 10, 1932.

The question litigated was as to the respective rights of the bank and the Nelsons to the moneys due on the claim. The trial court found generally for the bank and against the Nelsons, and ordered the moneys due on the claim, in the sum of $991.25, paid to the bank.

"The authorities are in direct conflict on the question whether, as between successive assignees, assignments of choses in action take precedence according to their date or only from the time of notice to the debtor." 5 C. J. 953. In *Ottumwa Boiler Works v. O'Meara & Son*, 206 Ia. 577, it is said: "The numerical weight of the authorities favors the rule that the assignee first giving notice of his claim to the debtor is preferred to the assignee who is prior in time, but who has not given such notice. This rule is recognized by the English courts, and seems to be the rule in California, New Jersey, Ohio, Missouri, Mississippi, Virginia, Tennessee, Vermont, Maine, Pennsylvania, Maryland, and Oklahoma. It is held, as between assignees of a common fund, that the one prior in point of time has priority, although he has given no notice of his assignment to either a subsequent assignee or the debtor, by the supreme court of the United States, and

by the courts of New York, West Virginia, Minnesota, Massachusetts, Oregon, Texas, and Kentucky." There is a note in 31 A. L. R. 876, on the subject. The reasons given to sustain the majority view are that it is the duty of the first assignee to do all in his power to take possession, that failing to give notice to the debtor is equivalent to leaving personal property in the seller's possession after·he has sold it. That it puts the seller in position to commit a fraud on a third person. The reasons for the rule are given in the case of *Dearle v. Hall* (1823) 3 Russ. 1, 10 Eng. Rul. Cas. 478, wherein it was said: "In *Ryall v. Rowles* (1749) 1 Ves. Sen. 348, the judges held that, in the case of a chose in action, you must do everything towards having possession which the subject admits; you must do that which is tantamount to obtaining possession, by placing every person, who has an equitable or legal interest in the matter, under an obligation to treat it as your property. For this purpose, you must give notice to the legal holder of the fund; in the case of a debt, for instance, notice to the debtor is, for many purposes, tantamount to possession. If you omit to give that notice, you are guilty of the same degree and species of neglect as he who leaves a personal chattel, to which he has acquired a title, in the actual possession, and under the absolute control, of another person."

The reasons for the rule are again stated in the case of *Murdoch & Dickson v. Finney*, 21 Mo. 138, as follows: "If, after a chose in action is transferred by its owner, it is assigned a second time, and the last assignee first give notice to the debtor of his right, his equity will be superior to that of the first assignee who has neglected to give notice; for, by such failure, the first assignee has enabled the owner of the chose in action to commit a fraud by making another sale. The second purchaser, by inquiring of the debtor, might have learned whether the debt had been transferred, or if notice of the transfer had been given to the debtor, he, after such notice, would pay the debt to another at his peril. The precaution of

making inquiry is always taken by a diligent purchaser, and if it is not taken, there is neglect, and no relief is extended to him who has been guilty of it."

In *Jenkinson v. New York Finance Co.*, 79 N. J. Eq. 247, it is said: "The equitable ground upon which the rule rests is the one adopted finally and after much discussion, viz., that the failure of the prior assignee to give notice is a negligence which leaves the assignor in a position where by his apparent ownership he is able to deal with the property in a manner to defraud or injure any subsequent purchaser notwithstanding all due inquiry made."

The reasons generally given for the minority rule are that the assignor, having made one assignment of the debt or fund, has nothing more to assign, and that the second assignee therefore takes nothing. The rule of *caveat emptor* applies. In the Texas case of *Hess & Skinner Engineering Co. v. Turney*, 110 Tex. 148, reasons for the rule are stated as follows: "In our opinion the rule is sound, which gives priority in rank to equitable assignments in the order of their dates, without regard to notice to the debtor. * * * The debtor is fully protected because he is not affected by the assignment until notified, and the subsequent assignee, in dealing with a chose in action, is chargeable with knowledge that he can get no better right than that of his assignor. It increases uncertainty in the law's administration to substitute the date of notice to the debtor as the test of priority for the date of assignment; and we can see how grave harm would follow for us to now depart from our thoroughly established simple test of priority in right from priority in time of the assignment." In *Columbia Finance & Trust Co. v. First Nat. Bank*, 116 Ky. 364, it is said: "The rule of *caveat emptor* applies to sales of choses in action as in other sales of personal property, and, if the seller has sold the thing to one person, and therefore has no title to pass to a second, the latter takes nothing by his purchase." It would be futile to attempt to quote from

the numerous authorities which support each of the divergent views. The authorities are collected in the note in 31 A. L. R. 876, above referred to, and in the recent case of *Salem Trust Co. v. Manufacturers Finance Co.*, 264 U. S. 182, 31 A. L. R. 867, wherein the supreme court of the United States aligns itself with the minority. Other late cases holding with the minority are *Ottumwa Boiler Works v. O'Meara & Son*, 206 Ia. 577; *Coon River Cooperative Sand Ass'n v. McDougall Construction Co.*, 215 Ia. 861; *Wilson v. Duncan*, 61 Fed. (2d) 515; *Moorestown Trust Co. v. Buzby*, 109 N. J. Eq. 409; *American Employers Ins. Co. v. Roddy*, 51 S. W. (2d) (Tex. Civ. App.) 280.

It is not necessary to decide which of the conflicting rules should be adopted in Nebraska, because under the circumstances of this case the second assignee is, in our judgment, entitled to the amount due by the application of well-established equitable principles. It does not appear that the agent who made the assignment to the bank knew of the first assignment to the Nelsons. No intentional fraud is shown and if Solomon, who was acting for the Nelsons at that time, had notified the county of the assignment it is not probable that an effort would have been made to sell the same claim to the bank because the agent at least of the assignor would have known of the Nelson assignment and it is not likely that he would have asked the county clerk to certify to the claim without showing the assignment, nor likely that the county clerk would have certified to the claim and given a copy to the agent without making it appear somewhere, either on the face of the claim or in his certificate, that the claim had already been assigned. These considerations answer the argument of the Nelsons that the bank was not injured by the failure of Solomon to give notice because the bank had not inquired before it purchased the claim. The evidence as a whole indicates that if the prior assignee had given notice the bank would have been advised through the county clerk or the claim would not have been a second time offered for sale.

Even in the states where the minority rule prevails it seems to us that the bank in this case would have to prevail. At the time of the assignment to the Nelsons the claim had not been filed against the county. Solomon authorized his assignor to collect the amount due from the county and thereby made the Standard Bridge Company his agent to file and collect the claim after it had been assigned to him. In giving this authority to his agent, Solomon put it in its power to commit the very act which it did commit in this case. Where one of two innocent persons must suffer by reason of the wrongful act of a third person, the one who made it possible for the third person to commit the act should bear the loss. The mere fact that the Nelsons had made their assignor, the Standard Bridge Company, its agent to "collect the above sum and upon such collection hold the same for the assignee" would not authorize its agent to sell and assign the claim. 2 C. J. 635, 653. But the rule is otherwise where the principal clothes the agent with apparent ownership and thus puts it in his power to defraud third persons. "Where the principal has fraudulently or negligently entrusted property to an agent with all the indicia of authority or ownership, a third person purchasing from such agent for a valuable consideration and in entire good faith will be protected from any claims of the principal, although the agent may have been given possession of the property for a special purpose and without authority to dispose of the same." 2 C. J. 882. It is quite apparent from the record, which shows a long course of dealings between them wherein claims after assignment were filed or collected by the bridge company in its own name, that Solomon, the agent of the Nelsons, intended the Standard Bridge Company to file the claim in its own name and collect the amount. He thus clothed the Standard Bridge Company with indicia of ownership, apparent authority to sell and assign, gave no notice whatever of his or their ownership of the claim, and thereby enabled the bridge

company to sell to the bank, which is an innocent purchaser for value.

In the note above referred to in 31 A. L. R. 876, it is said on page 881 that, "even in a jurisdiction where the minority view prevails, it has been held that a second assignee, who first gives notice to the obligor, is preferred to a first assignee who is negligent not only in failing to give notice to the obligor, but also in failing to take possession of the written evidence of the obligation," which in the case referred to was an insurance policy. See *Herman v. Connecticut Mutual Life Ins. Co.*, 218 Mass. 181, Ann. Cas. 1916A, 822.

In *Salem Trust Co. v. Manufacturers Finance Co.*, 264 U. S. 182, it is said:

"Facts and circumstances may create an equitable estoppel against the first assignee. *Herman v. Connecticut Mutual Life Ins. Co.*, 218 Mass. 181; *Rabinowitz v. People's Nat. Bank*, 235 Mass. 102. It would be unconscionable to permit him to prevail over a later assignee whom he had misled or deceived in respect of the assignor's title at the time of purchase by the latter. * * *

"The result will be the same if it be assumed that each *bona fide* purchaser takes merely an equity in the chose in action assigned. If equities are equal, the first in time is best in right. Otherwise the stronger equity will prevail."

Here the equities are in favor of the bank, which not only gave the prior notice, both because the Nelsons not only, failed to give notice, but made their assignor their agent to collect in its name the indebtedness, thus clothing it with the indicia of ownership.

In *Graham Paper Co. v. Pembroke*, 124 Cal. 117, 71 Am. St. Rep. 26, 44 L. R. A. 632, it was held that a subsequent assignee of book accounts and bills receivable, who notifies the debtor of such assignment, has a superior title to that of a prior assignee thereof, who has failed to give such notice, especially where the accounts and bills were left with the assignor for collection, and the

second assignee took possession thereof without notice of the prior assignment. In *Coffman v. Liggett's Adm'r*, 107 Va. 418, it was held that a later assignee of a chose in action, who first gave notice to the obligor of an assignment, is preferred to a prior assignee who failed to take possession of the evidence of indebtedness, and thereby contributed to the fraud by the assignor.

Another consideration in this case that supports the judgment of the district court is that the bank had funds of the assignor in its possession after this money was paid out and might have protected itself against loss if the first assignor had given notice within a reasonable time.

Appellant further contends that the assignment to the bank is only "the right, title and interest" the bridge company had on the date of the assignment, August 25, 1931, that it amounts merely to a quitclaim deed, and that inasmuch as the bridge company had nothing at that time to transfer the bank took nothing. The rights of the parties cannot be measured by the mere form of the instrument, but by the intention of the parties at the time. This part of the assignment is in the same form as that to the Nelsons. There are cases where a quitclaim deed is simply for the purpose of releasing some possible interest and there are other cases where the intention is to transfer the entire property. The facts and circumstances surrounding this transaction show that the intention was to transfer the entire claim to the bank. It is different from a quitclaim deed, inasmuch as it contains a guaranty of payment by the assignor and a direction to the county clerk "to assign and deliver all warrants therefor to First National Bank, Cozad, Nebr." The assignment as a whole is both a representation and a warranty that the amount mentioned was then due from the county to the Standard Bridge Company, and the bank paid the full face of the claim.

The judgment of the district court is right and is

AFFIRMED.